### UNITED STATES ex rel. ABERASTURI v. CAIN.

No. 859.

District Court, E. D. New York.

May 5, 1944.

Louis J. Opal, of New York City, for petitioner.

Harold M. Kennedy, U. S. Atty., Eastern District of New York, and Anthony G. Greco, Asst. U. S. Atty., both of Brooklyn, N. Y., for respondent.

MOSCOWITZ, District Judge.

On a writ of habeas corpus, relator seeks to be released from the United States Army on the ground that his selection for military service and induction into the armed forces was not authorized by the Selective Training and Service Act of 1940, as amended, and was contrary to law.

The Selective Training and Service Act of 1940, as amended, 30 U.S.C.A. Appendix § 303(a), reads: " * * * every male citizen of the United States, and every other male person residing in the United States, who is between the ages of eighteen and forty-five at the time fixed for his registration, shall be liable for training and service in the land or naval forces of the United States. Provided, That any citizen or subject of a neutral country shall be relieved from liability for training and service under this Act if, prior to his induction into the land or naval forces, he has made application to be relieved from such liability in the manner prescribed by and in accordance with rules and regulations prescribed by the President, but any person who makes such application shall thereafter be debarred from becoming a citizen of the United States."

Undisturbed by the consequences that he will forever be debarred from becoming a

citizen of the land in which he has chosen to live, relator made application pursuant to the proviso above quoted to be relieved from military service, claiming that he is not a citizen of the United States and that he is a citizen of Spain, a neutral country. The Government contends that the relator derived United States citizenship under the Nationality Act of 1934 and that he is subject to being called to serve this country in its army.

Section 2 of the Nationality Act of 1934 (amending Section 5 of the Act of March 2, 1907), 48 Stat. 797, 8 U.S.C.A. § 8, reads: "* * * That a child born without the United States of alien parents shall be deemed a citizen of the United States by virtue of the naturalization of * * * the father or the mother: Provided, That such naturalization * * * shall take place during the minority of such child: And provided further, That the citizenship of such minor child shall begin five years after the time such minor child begins to reside permanently in the United States."

Relator was born without the United States—in Spain—of alien parents, in 1924. His father came to the United States and was naturalized in 1935, when relator was a minor. Relator came to this country and commenced permanent residence here on October 22, 1936 and has lived here ever since. Relator clearly comes within the provisions of this Act and became a citizen of the United States thereunder on October 22, 1941, that being the day upon which he had completed five years' permanent residence here.

But relator contends that this result was prevented by the Nationality Act of 1940 (October 14, 1940, c. 876, Title 1, Section 101 et seq., 54 Stat. 1137, 8 U.S.C.A. § 501 et seq.), which became effective January 13, 1941, before the date upon which relator became a citizen of the United States under the 1934 Act, which was repealed by the new enactment. Prior to the passage by the Congress of the 1940 Act, the laws concerning naturalization and related matters were scattered throughout numerous statutes and it appears from the Presidential order of 1938 appointing a committee and from the report of the House Committee on Immigration and Naturalization that the purpose of the new legislation was to codify the existing laws and to revise them in some respects. The new section on derivative citizenship, 8 U.S.C.A. § 714, imposed the added prerequisite that both parents be naturalized before the minor may derive citizenship; concededly, relator did not become a citizen by virtue of the 1940 Act.

However, that the Congress did not intend to revoke or in any way to affect nationality, the acquisition of which had already commenced, is apparent from its enactment of Section 347, 8 U.S.C.A. § 747, which provides that nothing contained in the new Act "* * * shall be construed to affect the validity of any declaration of intention, petition for naturalization, certificate of naturalization or of citizenship, or other document or proceeding which shall be valid at the time this chapter shall take effect; or to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, or any act, thing, or matter, civil or criminal, done or existing, at the time this chapter shall take effect; but as to all such prosecutions, suits, actions, proceedings, acts, things, or matters, the statutes or parts of statutes repealed by this chapter, are hereby continued in force and effect."

In its report (Part I, page 63) to the Congress, the Committee on Immigration and Naturalization said of this saving clause: "Proposed section 346 (now 347) contains the customary clause by which the status quo is maintained in relation to naturalization proceedings and other related matters pending at the time the proposed (cost) becomes effective."

It is apparent that it was the Congress' intention to make the new Nationality Act prospective in its application and not retrospective unless specifically so provided. The broadest possible language was used in the saving clause and the words "act", "thing" and "matter" were employed to encompass everything that might not come within the purview of "proceeding". The Committee report shows that it was thought of as the ordinary all-inclusive saving clause.

This being so, the provisions of the Nationality Act of 1934 remained in force and effect as to anyone who had commenced the acquisition of citizenship thereunder prior to its repeal. A minor who had not acquired derivative citizenship under the 1934 Act on January 13, 1941, solely because he had not yet completed the five years permanent residence required by the 1934 Act, nevertheless acquired citizenship under that Act when the five years was up even

though the old Act had by then been repealed. The privilege of becoming a citizen of the United States, which most people other than the relator would covet, was not abrogated by the new legislation but was preserved by the saving clause.

Relator having become a citizen of the United States on October 22, 1941, he was subject to military service in 1943 under the Selective Training and Service Act.

The petition is dismissed.